## No. 28288

**The People of the State of Colorado v. Victor Mack Burns**

(593 P.2d 351)

Decided March 26, 1979.                    Rehearing denied April 30, 1979.

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, Felipe V. Ponce, Assistant, William Morris, Assistant, for plaintiff-appellee.

J. Gregory Walta, State Public Defender, Craig L. Truman, Chief Deputy, Nicholas R. Massaro, Jr., Deputy, for defendant-appellant.

*En Banc.*

MR. JUSTICE PRINGLE delivered the opinion of the Court.

The defendant appeals from his conviction for theft of a calf. He alleges here that the "theft of animals" statute, under which he was convicted, is unconstitutional and that certain evidence admitted at trial should have been suppressed. We affirm the conviction.

On the morning of April 13, 1977, Cecil Armstrong, a rancher and neighbor of the defendant, discovered that a three-day old calf was missing from his pasture. In searching for the calf, Mr. Armstrong and his son Roy found tire tracks and footprints on the county road adjacent to the pasture. An examination of the tire tracks revealed that the vehicle had three mud-snow tires and one regular highway tire, the latter located on the left rear wheel. They also found "drag marks" in the dirt, which indicated that the calf had been pulled under the pasture fence.

Mr. Armstrong notified the sheriff of his missing calf. Roy began to follow the tire tracks. He followed them to within a quarter mile of

defendant's house, where the road became paved. Roy continued on down the road which ran adjacent to defendant's house. As he approached the house, he observed from the road an open pen corralling a black, white-faced calf fitting the description of the missing calf. He also noticed a pickup truck parked near the house with three mud-snow tires and a left rear regular tire.

Roy returned home to report his findings. Again the sheriff was called, and he arrived shortly thereafter. The sheriff and Mr. Armstrong then drove to the defendant's house, where they also observed the calf and the pickup. They approached the pen, Mr. Armstrong identified the captive calf as his own, and the sheriff arrested the defendant.

The defendant was charged under section 35-43-128, C.R.S. 1973, the "theft of animals" statute:

"35-43-128. Theft of certain animals - penalty. Any person who commits theft of, or knowingly kills, sells, drives, leads, transports, or rides away, or in any manner deprives the owner of the immediate possession of any cattle, horses, mules, sheep, goats, swine, or asses, either live or slaughtered, or any portion of the slaughtered carcass thereof, or any person who commits theft of, or knowingly kills, sells, drives, leads, transports, or rides away, or in any manner applies to his own use any cattle, horses, mules, goats, sheep, asses, or swine, either live or slaughtered, or any portion of the slaughtered carcass thereof, the owner of which is unknown, or any person who knowingly purchases from anyone not having the lawful right to sell and dispose of the same any cattle, horses, mules, sheep, goats, swine, or asses, either live or slaughtered, or any portion of the slaughtered carcass thereof is guilty of a felony and, upon conviction thereof, shall be punished by imprisonment in the state penitentiary for not less than one year nor more than ten years and by a fine of not less than two hundred dollars nor more than five thousand dollars."[1]

Defendant's motion to dismiss the information on grounds that the above-quoted statute is unconstitutional was denied by the trial court. The defendant also moved to suppress introduction into evidence of the calf, claiming that it was the "fruit" of an illegal warrantless search that violated his Fourth Amendment rights.

The court denied this motion, finding that exigent circumstances existed to justify the warrantless search. He first found "that the calf could easily have been taken away and sold through a sales ring or otherwise secreted, as it was an unbranded new calf." The court also took judicial notice of the fact "that a young calf would require nourishment and the best source of nourishment would be from the mother cow, and without it there

---

[1] This section has been amended, effective April 1, 1979, to make "theft of animals" a class 5 felony, punishable according to the provisions of section 18-1-105, C.R.S. 1973 (1978 Repl. Vol. 8). See section 35-43-128, C.R.S. 1973 (1978 Supp.).

would be some risk of the calf dying from lack of nourishment."

The jury found the defendant guilty. He was sentenced to four to seven years in the state penitentiary.

The defendant appeals the trial court's ruling that the above-quoted statute is constitutional. He notes that the value of this calf was $40-$50 and argues that had he stolen anything of that value other than an animal, he would only have been guilty of a misdemeanor under the general theft statute, section 18-4-401, C.R.S. 1973.[2] Thus, he claims, punishing him as a felon under the theft of animals statute deprives him of equal protection of the laws.

■ We find this challenge to be without merit. An equal protection problem arises only where different statutes prescribe different penalties for the same conduct. However, the theft of animals statute relates specifically to theft of *animals,* conduct which is distinguishable from theft of other articles. This distinction has been made by the legislature, which obviously has concluded that theft of animals is a crime of greater consequence to society in this state than a general theft and that it requires a greater penalty.[3]

In *People v. Czajkowski,* 193 Colo. 352, 568 P.2d 23 (1977), we addressed the same challenge with respect to the "theft of auto parts" statute. We said there:

"Simply because an act may violate more than one statutory provision does not invalidate the legislation in question, so long as the legislative classification is not arbitrary or unreasonable, and the differences in the provisions bear a reasonable relationship to the persons included and the public policy to be achieved. [Citations omitted.]" 568 P.2d at 25.

■ The *Czajkowski* rationale is controlling here. We do not think that the distinction made by the legislature between a general theft and theft of animals is arbitrary or unreasonable. Rather, it displays a legitimate legislative judgment. Thus there is no violation of equal protection here. *People v. Marshall,* 196 Colo. 381, 586 P.2d 41 (1978).

Next, the defendant alleges that the statute deprives him of due process of law because he contends that under its language he could be convicted without any allegation or proof that he intended to "permanently deprive" the owner of his calf, or that the taking was done without authorization, or that he had a "culpable mental state" at the time of the crime. Thus, he claims, the statute creates a felony for what could be, in effect, a strict liability crime.

■ We also find this contention to be without merit. The legislature provides the definitions of the crimes it creates. Where no definition of the

---

[2] Now 18-4-401, C.R.S. 1973 (1978 Repl. Vol. 8).

[3] There can be no doubt about this since the 1977 General Assembly, in reviewing and amending the bill, continued to classify "theft of animals" as a felony. *See supra,* n. 1.

named offense is given, the common law elements of the offense must be proved. *Thompson v. People,* 181 Colo. 194, 510 P.2d 311 (1973).

Here, however, the legislature has specifically defined the crime of "theft of animals" to include "theft of, or knowingly kills, sells, drives, leads, transports, or rides away, or in any manner deprives the owner of the immediate possession . . . ." The fact that the crime is entitled *theft* of animals does not require that the elements of common law theft be included in the crime. The title is only a title and has no definitional significance. *People v. Summit,* 183 Colo. 421, 517 P.2d 850 (1974).

Furthermore, the jury here was properly instructed that a culpable mental state was an essential element of the crime, one which must be proved beyond a reasonable doubt. Defendant's claim that he may have been convicted without proof of any culpable mental state is therefore erroneous.

Finally, the defendant contends that the trial court erred in finding that exigent circumstances existed, discussed *supra,* to allow a warrantless search of his premises. Thus, he claims, evidence of the fruits of that search — the calf — should not have been admitted.

Because we find competent evidence in the record to uphold the trial court's conclusions that these exigent circumstances existed, *see People v. Eakins,* 196 Colo. 517, 587 P.2d 790 (1978), we affirm his denial of the motion to suppress.

The conviction below is affirmed.

MR. JUSTICE ERICKSON and MR. JUSTICE CARRIGAN do not participate.